**BOSTON INS. CO. et al. v. PORTER. \***
(No. 3266.)

(Court of Civil Appeals of Texas. Texarkana.
Feb. 18, 1926. Rehearing Denied
Oct. 7, 1926.)

**1. Insurance ☞335(2).**

Inventory designating articles of merchandise by names of brands *held* substantial compliance with insurance policy requiring inventory.

**2. Insurance ☞668(4).**

On evidence of insured that he kept books enabling him to tell amount of merchandise on hand at time of fire, whether value could be ascertained therefrom as required by policy *held* for jury.

**3. Insurance ☞646(6).**

Insurer, to defeat recovery on fire policy, has burden of proving incendiarism on part of insured; such being an affirmative defense.

Error from District Court, Camp County; R. T. Wilkinson, Judge.

Separate suits by C. L. Porter against the Boston Insurance Company, Phœnix Insurance Company, and the Continental Insurance Company, consolidated for trial. Judgment for plaintiff, and defendants bring error. Affirmed.

Thompson, Knight, Baker & Harris, of Dallas, and C. E. Bryson, of Pittsburg, for plaintiffs in error.

C. G. Engledow, of Pittsburg, and Henderson & Bolin, of Daingerfield, for defendant in error.

HODGES, J. C. L. Porter filed a suit against the Phœnix Insurance Company in the district court of Franklin county, which was later transferred to Camp county. He

filed two other suits in the district court of Camp county—one against the Boston Insurance Company and the other against the Continental Insurance Company. These three suits were consolidated for the purpose of trial in the district court of Camp county.

According to the facts alleged and proved on the trial, W. D. Berry owned a stock of merchandise in Naples, Tex., which, together with some store furniture and fixtures, was destroyed by fire on March 9, 1925. At the time of the loss Berry held policies of insurance in the companies above named. He later transferred them to the defendant in error, Porter, for the benefit of certain creditors. Upon the refusal of the insurance companies to pay the amount of the losses, these suits were instituted by Porter.

Among other defenses, the insurance companies pleaded that the fire was caused by Berry, or some one acting under his direction. That was the only issue submitted to the jury on the trial below. Upon a finding against the plaintiffs in error a judgment was entered for the full amount of the policies together with interest. Each of the policies contained the following stipulations:

"The assured will make a complete, itemized inventory of stock on hand at least once in each calendar year, and within 12 months of the last preceding inventory if such has been taken. Unless such an inventory has been taken within 12 calendar months prior to the date of this policy, and, together with a set of books showing a complete record of business transacted since the taking of such inventory, is on hand at the date of this policy, one shall be taken within 30 days after the date of this policy, or in each and either case this entire policy shall be null and void.

"The assured will make and prepare in the regular course of business from and after the date of this policy a set of books which shall clearly and plainly present a complete record of business transacted, including all purchases, sales, and shipments both for cash and on credit, or this entire policy shall be null and void.

"The term 'complete record of business transacted' as used above is meant to include in said set of books a complete record of all the property which shall go into the premises and be added to the stock and of all property taken from the stock, whether by the assured or by others, even though not technically purchases or technically sales."

It is insisted on this appeal that Berry failed to comply with these stipulations, or warranties, and for that reason the court should have rendered a judgment in favor of the insurance companies.

[1] According to Berry's testimony, he took an inventory of his entire stock on January 1st preceding the fire. That inventory was exhibited on the trial. The particular objections made in the brief of plaintiffs in error refer to certain abbreviations used in designating articles of merchandise, and ditto marks when several items of the same class followed each other in a list. It is also insisted that the inventory did not sufficiently designate the name of each article of merchandise listed as a part of the stock. For instance, he would use the terms "Tinsley," "Brown Mule," "Micky Twist," "Peach Plug," "Spark Plug," etc., in referring to certain brands of tobacco. We think the inventory was sufficient to constitute a substantial compliance with the terms of the policies.

[2] Berry also testified that he kept a set of books which enabled him to tell how much merchandise he had on hand at the time of the fire. The books were produced, and he was examined at some length regarding many of the entries therein made. While the testimony shows that a different system might have been clearer and more easily understood, yet we cannot say as a matter of law that his method was not sufficient to meet the requirements of his contract. The court had a right to conclude that a person of ordinary business capacity and training as a bookkeeper could take the books and ascertain therefrom the value of the stock on hand at the time of the fire. We shall not undertake to set out the testimony in detail, as that would unnecessarily prolong the discussion of a simple issue of fact.

[3] There was no error in the charge of the court in placing the burden on the plaintiffs in error of proving incendiarism on the part of Berry. That was an affirmative defense which the defendants in the suit were required to establish. The language of the charge is not subject to the objection made.

The remaining assignments are overruled without discussion, and the judgment affirmed.